Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| CUSTOM GROUP, LLC<br>Recurrente<br><br>v.<br><br>JUNTA DE SUBASTAS DEL DEPARTAMENTO DE LA VIVIENDA DE PUERTO RICO; DEPARTMENTO DE LA VIVIENDA DE PUERTO RICO<br>Recurrido<br><br>v.<br><br>INNOVATIVE EMERGENCY MANAGEMENT, INC.; TETRA TECH, INC.<br>Licitadores agraciados<br><br>BRENDA MARRERO & ASOCIADOS GROUP, PLEXOS GROUP, LLC, FAMILY ENDEAVORS, INC., CSA ARCHITECTS & ENGINEERS, LLP; TIDAL BASIN CARIBE, LLC<br>Licitadores no agraciados | KLRA202400607<br><br><br>cons. con | *REVISIÓN JUDICIAL* procedente de la Junta de Subastas del Departamento de la Vivienda de Puerto Rico<br><br>RFP Núm.: CDBG-DRMIT-RFP-2023-05<br><br>Sobre:<br>Request for proposal for program management services community energy and water resilience installations program, home energy resilience installations and incentive subprograms under the CDBG-DR CDBG-MT Puerto Rico, Department of Housing |
| TIDAL BASIN CARIBE, LLC<br>Recurrente<br><br>v.<br><br>JUNTA DE SUBASTAS DEL DEPARTAMENTO DE LA VIVIENDA DE PUERTO RICO; DEPARTAMENTO DE LA VIVIENDA DE PUERTO RICO<br>Recurrido<br><br>v.<br><br>INNOVATIVE EMERGENCY MANAGEMENT, INC.; TETRA TECH, INC.; CUSTOM GROUP, LLC<br>Proponentes-seleccionados<br><br>BMA GROUP, PLEXOS GROUP, LLC, FAMILY ENDEAVORS, INC., CSA ARCHITECTS & ENGINEERS, LLP<br>Proponentes | KLRA202400608 | Sobre:<br>Impugnación de Adjudicación de Subasta sobre Requerimiento de Propuestas No. CDBG-DRMIT-RFP-2023-05 "Program Management Services related to the CEWRI-HH and CEWRI-DR" |

Número Identificador

SEN2024 _____

Panel integrado por su presidente, el juez Bermúdez Torres, el juez Adames Soto y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 19 de diciembre de 2024.

Comparece ante nos la parte recurrente, Custom Group, LLC y Tidal Basin Caribe, LLC, y nos solicita la revisión y revocación del Aviso de Adjudicación (*Notice of Award*) emitido y notificado por el Departamento de la Vivienda de Puerto Rico el 9 de octubre de 2024. Mediante el mismo, el referido organismo notificó la adjudicación del requerimiento de propuestas a favor de Innovative Emergency Management, Inc. y Tetra Tech, Inc.

Junto a su recurso, Tidal Basin Caribe, LLC presentó una *Moción Urgente en Auxilio de Jurisdicción,* la cual declaramos Ha Lugar mediante *Resolución* del 25 de noviembre de 2024.

Por los fundamentos que expondremos a continuación, se deja sin efecto la paralización de los procedimientos y se desestiman los presentes recursos consolidados por falta de jurisdicción.

## I

El 29 de agosto de 2023, el Departamento de la Vivienda de Puerto Rico (Departamento de la Vivienda o recurrido) publicó un *Request for Proposals No. CDBG-DRMIT-RFP-2023-05* para el *Program Management Services Under Community Development Block Grant – Disaster Recovery* (CDBG-DR) y el *Program and Community Development Block Grant Mitigation* (CDBG-MIT).[1] Conforme surge de los documentos de autos, la Junta de Subastas del Departamento de la Vivienda (Junta) recibió propuestas por BMA Group; Plexos Group, LLC; Tetra Tech, Inc. (Tetra); Innovative Emergency Management, Inc. (Innovative); Family Endeavors, Inc., dba Endeavors; CSA Architects & Engineers, LLP; Custom Group, LLC

---

[1] Apéndice del recurso KLRA202400608, págs. 16-115, 1534-1559, 1678-1840.

(Custom o recurrente); y Tidal Basin Caribe, LLC (Tidal o recurrente), en calidad de proponentes.[2]

Evaluadas las propuestas, el 6 de febrero de 2024, la Junta emitió un *Notice of Award* a favor de Innovative y Tetra.[3] Indicó que los detalles de los nombres, direcciones y la información de contacto de todos los proponentes que presentaron una propuesta en respuesta al *request for proposal* se encontraban en el Exhibit II (*Bid Board Resolution*), el cual, según indicó, formaba parte integral del *Notice of Award* recurrido. El contenido de la referida misiva, en lo pertinente, incluía lo siguiente:

> The following proposers were deemed Not Qualified:
>
> 1. BMA Group (BMA) – The proposer was ranked as Not Qualified. BMA Group passed the submission requirements evaluation for this RFP. As a result of the evaluation performed, the Proposer received a rating of Excellent in the critical criterion of professional qualifications and the experience of the proposer to successfully perform the services required. The Proposer received a rating of Fair for the critical criteria of professional qualifications and specialized experience of the proposed key staff; and the quality of the proposed approach and its relevance to the services described in this RFP. For the important criterion of the capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe, BMA received a Fair rating as well. Given that BMA Group received two ratings of Fair in critical criteria, it was ranked as Not Qualified as instructed in the RFP.
>
> 2. Plexos Group[,] LLC (Plexos) was ranked as Not Qualified by the EC. The Proposer passed the submission requirements evaluation for this RFP. Plexos received a rating of Excellent for the critical criteria of the professional qualifications and experience of the Proposer to successfully perform the services required, and the quality of the proposed work approach and its relevance to the services requested. In the important criterion of the capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe, the Proposer received a rating of Excellent as well. Regarding the critical criterion of the professional qualifications and specialized experience of the proposed key staff this Proposer obtained a rating of Fair. Having Plexos obtained a rating of Fair in a critical criterion, the EC ranked Plexos as Not Qualified.
>
> 3. Family Endeavors, Inc., dba Endeavors (Family Endeavors) – was ranked as Not Qualified. Family

---

[2] Apéndice del recurso KLRA202400608, págs. 423-1129.
[3] Íd., págs. 3021-3028.

Endeavors passed the submission requirements evaluation for this RFP. As a result of the evaluation performed, the Proposer received a rating of Fair in the first criterion of professional qualifications and the experience of the proposer to successfully perform the services required, as well as for the second criterion of professional qualifications and specialized experience of the proposed key staff. In the third criterion of quality of the proposed approach and its relevance to the services described in this RFP Family Endeavors received a rating of Fair. For the fourth criterion of capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe, the Proposer received a rating of Good. Given that, Family Endeavors received ratings of Fair in all critical criteria, it was ranked as Not Qualified by the EC.

4. CSA Architects & Engineers, LLP (CSA) was ranked as Not Qualified. CSA passed the submission requirements evaluation for this RFP. As a result of the evaluation performed, the Proposer received a rating of Excellent in the critical criterion of professional qualifications and the experience of the proposer to successfully perform the services required. In the important criterion regarding the capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe, the Proposer received a rating of Excellent. CSA received a rating of Fair in the critical criterion of professional qualifications and specialized experience of the proposed key staff. In the critical criterion of quality of the proposed approach and its relevance to the services described in this RFP, the Proposer received a rating of Good. For all the reasons above, having received a rating of Fair in one critical criterion, CSA was ranked as Not Qualified by the EC.

5. Tidal Basin Caribe[,] LLC (TBC) was ranked as Not Qualified. TBC passed the submission requirements evaluation for this RFP. As a result of the evaluation performed, the Proposer received a rating of Excellent in the critical criterion of professional qualifications and the experience of the proposer; and for the quality of the proposed approach and its relevance to the services described in this RFP. For the fourth criterion regarding the capacity of the key staff and the ability to commit adequate time to effectively perform the services, the Proposer received rating of Good in this criterion. Regardless, the second criterion of professional qualifications and specialized experience of the proposed key staff TBC received a rating of Fair. Therefore, the EC ranked TBC as Not Qualified.

The following proposers were deemed Highly Qualified:

1. Innovative Emergency Management, Inc. (IEM) was ranked as Highly Qualified. IEM passed the submission requirements evaluation for this RFP. As a result of the evaluation performed, the Proposer received a rating of Excellent in the critical criterion of professional qualifications and the experience of the proposer to successfully perform the services required, as well as in the second criterion of professional qualifications and specialized experience of the proposed key staff. In the third criterion of quality of the proposed approach and its relevance to the services described in this RFP, IEM also

received a rating of Excellent. For the important criterion of capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe, the Proposer received a rating of Excellent.

In terms of the Section 3 Business concern and MBE/WBE, IEM didn't submit evidence accreditive of been a Section 3 business but did present evidence of been a MWBE enterprise. Hence, MWBE preference was given by the EC. Therefore, the EC ranked IEM as Highly Qualified.

2. Tetra Tech, Inc[.] (Tetra Tech) was ranked as Highly Qualified. The Proposer passed the submission requirements evaluation for this RFP. Tetra Tech received a rating of Excellent for the critical criteria of the professional qualifications and experience of the Proposer to successfully perform the services required, and for the important criterion regarding the capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe. Regarding the critical criteria of the professional qualifications and specialized experience of the proposed key staff and the quality of the proposed approach and its relevance to the services, this Proposer obtained a rating of Good.
In terms of the Section 3 Business concern and MBE/WBE, Tetra Tech did not submitted *[sic]* the documentation required, consequently, it was not conceded any preference to this proposer. For all the reasons above, and as per section 10.3.3 of the RFP Tetra Tech was ranked as Highly Qualified.

3. Custom Group, LLC (Custom Group) was ranked as Highly Qualified. The Proposer passed the submission requirements evaluation for this RFP. As a result of the evaluation completed by the EC, the Proposer received a rating of Excellent for the critical criterion of quality of the proposed approach and its relevance to the services described in this RFP. For the important criterion of capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe, Custom Group received a rating of Excellent as well. Custom Group received a rating of Good in the critical criterion of professional qualifications and specialized experience of the proposed key staff. Lastly, Custom received a rating of Good for the critical criterion of professional qualifications and experience of the Proposer to successfully perform the services required.

In terms of the Section 3 Business concern and MBE/WBE, Custom Group didn't submit evidence accreditive of been a Section 3 or WBE business. However, the Proposer did present evidence accreditive of been an MBE enterprise, hence, MBE preference was given by the EC. Given all of the above, Custom Group was considered as Highly Qualified as identified in the RFP.

[…].[4]

---

[4] Apéndice del recurso KLRA202400608, págs. 3022-3025. (Énfasis omitido).

La Junta expresó que la adjudicación se otorgó a los proponentes responsables, cuyos enfoques técnicos del proyecto, calificaciones, precios, entre otros factores considerados, resultaron en el más ventajoso para el Departamento de la Vivienda, siempre y cuando el costo sea razonable según los métodos identificados en el Manual de Adquisiciones para los Programas CDBG-DR, CDBG-MIT y CDBG Estatal, Reglamento Núm. 9506 de 25 de septiembre de 2023.

Inconforme, el 26 de febrero de 2024, la parte recurrente instó un recurso de revisión judicial ante este Foro apelativo, con nomenclatura KLRA202400099.[5] Luego de varios trámites procesales,[6] el 24 de mayo de 2024, notificada el 28 del mismo mes y año, este panel emitió una *Sentencia* mediante la cual desestimó el recurso por falta de jurisdicción por notificación defectuosa.[7] En síntesis, resolvimos que no concurrían las exigencias reconocidas por nuestro ordenamiento jurídico para legitimar la oponibilidad del *Notice of Award*, específicamente por la ausencia total de expresión relativa al derecho a reconsideración consagrado en la Sección 3.19 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, 3 LPRA sec. 2165 (LPAU), así como el derecho a una revisión administrativa ante la Junta Revisora de la Administración de Servicios Generales, entre otras deficiencias.

Así las cosas, el 22 de julio de 2024, notificada al día siguiente, la Junta emitió otro *Notice of Award*, a favor de Innovative y Tetra.[8] En esencia, reprodujo el aviso de adjudicación anterior, con excepción de la siguiente salvedad añadida al final de la determinación:

> The award hereby notified is made pursuant to Judgement KLRA202400099 by the Court of Appeals of Puerto Rico, issued on May 24, 2024, applicable to the parties of the case.

---

[5] Apéndice del recurso KLRA202400608, págs. 3390-3441.
[6] Íd., págs. 3442-3630.
[7] Íd., págs. 3631-3651.
[8] Íd., págs. 3691-3699.

As stated in the referenced Judgement, "the total absence of expression regarding the right to reconsideration enshrined in Section 3.19 of the LPAU, supra, as well as the right to an administrative review before the General Services Administration Review Board, constitute a defect of a substantive nature that deprives the appellant of questioning the correctness of the administrative work carried out."

The Notice of Award shall indicate that any party that considers itself to have been adversely affected in this public Bid or Request for Proposals may file an Administrative Review before the Bid Review Board of the General Service Administration within ten (10) days from the date on which a copy of the Notice of Award was duly notified, as set forth in Section 3.19 of Act 38-2017 before February 19, 2024, as amended, known as Uniform Administrative Procedures Act of the Government of Puerto Rico. See also, Act No. 201-2003, as amended, known as the Judiciary Act of the Commonwealth of Puerto Rico of 2003, 4 LPRA § 24 et seq.

It is important to clarify that nothing herein provided shall modify the Procurement Manual, Regulation 9506, on any of its sections.

The mere filing of a judicial review compliant to section 4.2 of Act 38-2017, as amended, will not have the effect of halting the contested award.

[...].[9]

En desacuerdo, el 12 de agosto de 2024, Tidal compareció nuevamente ante este Foro mediante el recurso de revisión KLRA202400446.[10] Posteriormente, Custom instó el recurso de revisión KLRA202400487. Luego de una revisión sosegada, ambos recursos fueron desestimados por falta de jurisdicción. Mediante *Sentencia* del 30 de agosto de 2024,[11] determinamos que la ausencia de expresión relativa al derecho a reconsideración consagrado en la Sección 3.19 de la LPAU, *supra*, así como el derecho a solicitar una revisión judicial de la decisión ante el Tribunal de Apelaciones, constituyen defectos de carácter sustantivo que privan a la parte recurrente de cuestionar la corrección del quehacer administrativo ejercido. Asimismo, concluimos que el contenido del *Notice of Award* en cuestión, nuevamente, era una notificación defectuosa, toda vez que carecía de las siguientes exigencias: (1) Una síntesis o resumen de las propuestas sometidas por los ofertantes; (2) El nombre de

---

[9] Apéndice del recurso KLRA202400608, págs. 3698-3699.
[10] Íd., págs. 4311-4366.
[11] Íd., págs. 4482-4507.

cada ofertante con indicación de las partidas adjudicadas a su favor y **el motivo de rechazo de las partidas no adjudicadas**; (3) **Defectos, si alguno, de las propuestas de los ofertantes no agraciados**; (4) Documentos de los ofertantes agraciados necesarios para la ejecución del contrato; (5) El plazo asignado para que los ofertantes agraciados presenten la documentación requerida y; (6) Una advertencia de que la adjudicación no es vinculante hasta que se ejecute el contrato. En mérito de lo anterior, una vez más, resolvimos que la Junta incumplió con los requisitos jurisdiccionales estatuidos para imprimir eficacia a su quehacer y, en su consecuencia, la notificación de su determinación era una defectuosa e inadecuada.

El 9 de octubre de 2024, la Junta emitió y notificó otro *Notice of Award*, a favor de Innovative y Tetra.[12] En esencia, añadió la síntesis de las propuestas sometidas por los ofertantes; nombre de cada ofertante con indicación de las partidas a su favor; documentos de los ofertantes agraciados necesarios para la ejecución del contrato; el plazo asignado para que los ofertantes agraciados presenten tales documentos, así como la advertencia de que la adjudicación no es vinculante hasta que se ejecute el contrato. Igualmente, incluyó el derecho a reconsideración consagrado en la Sección 3.19 de la LPAU, *supra*, y el derecho a solicitar una revisión judicial ante esta Foro apelativo.

Insatisfecha, el 29 de octubre de 2024, Custom compareció ante nos mediante el recurso de revisión judicial KLRA202400607. En el mismo, propuso los siguientes señalamientos de error:

> Erró la Junta de Subasta[s] al no aplicar a la evaluación de Custom Group, LLC la preferencia en el criterio de evaluación por haber sometido evidencia del MBE.

> Erró la Junta de Subasta[s] al no adjudicarle la buena pro a Custom Group, LLC siendo esta la licitadora con la propuesta económica más razonable, en comparación

---

[12] Apéndice del recurso KLRA202400608, págs. 4534-4562.

con el porciento de diferencia del ICE y la capacidad del equipo de trabajo clave y la habilidad de comprometer tiempo adecuado para realizar los servicios efectivamente.

Erró la Junta de Subasta[s] al determinar que la oferta de Custom Group, LLC no representó la más ventajosa en atención a las ofertas de los demás proponentes altamente cualificados sin tomar en consideración la ausencia de l[í]mite en la selección de licitadores[.]

Igualmente inconforme, el mismo día, Tidal instó ante nos el recurso de revisión judicial KLRA202400608, mediante el cual señaló la comisión de los siguientes errores:

Erró Vivienda y su Junta de Subastas al emitir un Aviso de Adjudicación que incumple con la *Sentencia* de este Foro en los casos KLRA202400099 y KLRA202400446, y todavía contiene defectos insubsanables que violan el debido proceso de ley de Tidal Basin, y de las demás compañías licitadoras no agraciadas, y que hacen que dicha notificación sea ineficaz.

Erró y abusó de su discreción Vivienda y su Junta de Subastas al no permitirle a la peticionaria acceso a la totalidad del expediente administrativo, actuación constitutiva de una violación al debido proceso de ley y a su derecho de acceso a la información que impacta adversamente su derecho a una adecuada revisión judicial.

Erró y abusó de su discreción la Junta de Subastas y Vivienda al descalificar a Tidal Basin por entender que el personal clave ("Key Staff") propuesto por [e]sta no cumplía con el requisito de cualificaciones profesionales y conocimiento especializado establecido en el RFP-2023-05.

    (i) Erró y abusó de su discreción Vivienda y la Junta de Subastas al utilizar un procedimiento de evaluación de propuestas ambiguo, impreciso, ininteligible y que no guardó relación con lo anticipado en el RFP-2023-05[.]

Erró y abusó de su discreción Vivienda y su Junta de Subastas al no seleccionar al licitador que más cercano estuvo al costo estimado independiente (ICE), Tidal Basin, según fue establecido por la propia Junta de Subastas.

Junto a su recurso, Tidal presentó una *Moción Urgente en Auxilio de Jurisdicción*, a la cual se opuso Innovative y el Departamento de la Vivienda el 25 de noviembre de 2024, luego de

concedidas varias prórrogas a esos efectos. Evaluada la petición, el mismo día, un panel hermano de esta Curia la declaró Ha Lugar.

Por otro lado, mediante *Resolución* del 18 de noviembre de 2024, le concedimos un término a la parte recurrida para que mostrara causa por la cual no debíamos desestimar el recurso por falta de jurisdicción por notificación defectuosa. En particular, sobre la falta de los motivos específicos –no generales– y los defectos, si alguno, de rechazo de las propuestas que no fueron adjudicadas.

En cumplimiento con lo anterior, el 25 de noviembre de 2024, la parte recurrida compareció mediante *Moción para Mostrar Causa por la que no se Debe Desestimar el Recurso por Falta de Jurisdicción y Otros Extremos*. En síntesis, sostuvo que había seguido meticulosamente los lineamientos reglamentarios y las determinaciones judiciales pertinentes. Afirmó que la notificación de adjudicación recurrida cumple con los estándares establecidos por la jurisprudencia y la normativa aplicable. Sobre Custom, la parte recurrida no hizo argumento alguno en cuanto a la ausencia total en el *Notice of Award* de las razones por las cuales el organismo administrativo rechazó su propuesta. Más bien, la agencia recurrida se limitó a expresar en el desglose de los *Hechos Pertinentes* de su moción que, "[a]unque Custom fue clasificado como '[a]ltamente [c]alificado,' su propuesta no fue seleccionada para la adjudicación final debido a que otras propuestas [...] presentaron una combinación más sólida de experiencia, calidad de enfoque y propuesta económica".[13]

En cuanto a Tidal, la parte recurrida argumentó que, conforme surgía del *Notice of Award*, había detallado el área específica donde la propuesta de dicha parte incumplió con las expectativas del *request for proposal*. Adujo que ello le permitía a

---

[13] Véase, *Moción para Mostrar Causa por la que no se Debe Desestimar el Recurso por Falta de Jurisdicción y Otros Extremos*, pág. 3. (Énfasis omitido).

Tidal comprender la razón específica de su descalificación y reforzaba la legitimidad del proceso administrativo. Arguyó, además, que la inclusión de los defectos específicos, como el incumplimiento de las cualificaciones del personal clave, proporcionaba a los tribunales una base clara para evaluar si la decisión administrativa fue arbitraria o caprichosa. Enfatizó que la frase "various of their proposed [k]ey [s]taff did not comply with all of the requirements for their corresponding positions", al ser contextualizada dentro del marco evaluativo del *request for proposal*, señalaba claramente un defecto específico en un aspecto técnico crítico para la adjudicación, lo cual satisfacía el estándar jurisprudencial establecido en *Pta. Arenas Concrete, Inc. v. J. Subastas*, 153 DPR 733 (2001). Abundó que, según el *request for proposal*, los criterios críticos, como las cualificaciones del personal clave, tenían un peso significativo en la evaluación y buscaban garantizar que el proponente tenga el equipo necesario para cumplir con los objetivos técnicos y administrativos del proyecto. Expuso que el incumplimiento de Tidal, en ese aspecto, justificaba su calificación de *Fair* y, en consecuencia, su descalificación por incumplir con los estándares exigidos para la ejecución del programa. Alegó que ese nivel de detalle no solo permitía a los proponentes comprender los fundamentos de la decisión, sino que también reforzaba la legitimidad del proceso administrativo y protegía el interés público en el manejo eficiente de los recursos del Estado.

La parte recurrida afirmó que la notificación de adjudicación también detallaba los defectos específicos de otros proponentes no seleccionados, como BMA Group y Family Endeavors, Inc. Asimismo, destacó que cada evaluación se realizó bajo los mismos estándares y parámetros objetivos. Aseguró que dichos ejemplos demostraban que no solo había identificado los defectos específicos de Tidal, sino que aplicó consistentemente los mismos estándares a

todos los proponentes, fortaleciendo la legitimidad del proceso. Por último, reiteró en su escrito que la notificación de adjudicación cumplía rigurosamente con el requisito de detallar los defectos específicos que llevaron a la descalificación de los proponentes no seleccionados.

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

## II

## A

La jurisdicción es el poder o autoridad de un tribunal para considerar y decidir casos y controversias. *R&B Power, Inc. v. Junta de Subasta ASG*, 2024 TSPR 24, 213 DPR ___ (2024); *FCPR v. ELA et al.*, 211 DPR 521 (2023); *MCS Advantage v. Fossas Blanco et al.*, 211 DPR 135 (2023); *Cobra Acquisitions v. Mun. Yabucoa et al.,* 210 DPR 384 (2022). Es por ello que, la falta de jurisdicción de un tribunal incide directamente sobre el poder mismo para adjudicar una controversia. *Allied Mgmt. Group v. Oriental Bank*, 204 DPR 374, 386 (2020). Por tal razón, es norma reiterada que los tribunales son celosos guardianes de su jurisdicción y que tienen el deber ineludible de auscultar dicho asunto con preferencia a cualesquiera otros. *R&B Power, Inc. v. Junta de Subasta ASG*, supra; *Pueblo v. Torres Medina*, 211 DPR 950 (2023).

De ese modo, la ausencia de jurisdicción trae varias consecuencias, tales como: (1) que no sea susceptible de ser subsanada; (2) las partes no puedan conferírsela voluntariamente a un tribunal como tampoco puede este arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) obliga a los tribunales apelativos a examinar la jurisdicción del foro de donde procede el recurso; y (6) puede presentarse en cualquier etapa del

procedimiento, a instancia de las partes o por el tribunal *motu proprio*. *Allied Mgmt. Group v. Oriental Bank*, supra.

En ese sentido, en reiteradas ocasiones el Tribunal Supremo de Puerto Rico ha expresado que los tribunales tenemos el deber de proteger nuestra jurisdicción sin poseer discreción para asumirla donde no la hay. *Pueblo v. Ríos Nieves*, 209 DPR 264 (2022). Por tanto, si un tribunal carece de jurisdicción, solo resta así declararlo y desestimar la reclamación sin entrar en los méritos de la controversia. *Municipio de Aguada v. W. Construction, LLC y otro*, 2024 TSPR 69, resuelto el 21 de junio de 2024; *R&B Power, Inc. v. Junta de Subasta ASG*, supra; *Mun. de San Sebastián v. QMC Telecom*, 190 DPR 652, 660 (2014). A esos efectos, las cuestiones de jurisdicción son de índole privilegiada y deben ser resueltas con preferencia. *Íd.*; *Pueblo v. Ríos Nieves*, supra; *FCPR v. ELA et al.*, supra.

**B**

El Tribunal Supremo de Puerto Rico ha reiterado la importancia que reviste para la buena marcha de la cosa pública, que los procesos de adquisición de bienes y servicios del gobierno se lleven a cabo con eficiencia, honestidad y completa probidad. *R & B Power v. E.L.A.*, 170 DPR 606, 619 (2007); *Empresas Toledo v. Junta de Subastas*, 168 DPR 771 (2006); *A.E.E. v. Maxon*, 163 DPR 434 (2004). De ordinario, en la adquisición competitiva de bienes y servicios por el gobierno central y municipal, se utiliza el mecanismo de la subasta pública formal o tradicional. *Íd.*; *PR Eco Park et al. v. Mun. de Yauco*, 202 DPR 525, 531 (2019). Asimismo, el *request for proposal* o requerimiento de propuestas es otro mecanismo disponible para que el gobierno adquiera bienes y servicios, caracterizado por su apertura a negociaciones y por ser un procedimiento informal y flexible. *Íd.* Por medio de ambos mecanismos se protegen los intereses del gobierno, toda vez que

procuran conseguir los precios más económicos, evitan el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento. *Transporte Sonnell, LLC v. Junta de Subastas de la Autoridad de Carreteras y Transportación de Puerto Rico y otro*, 2024 TSPR 82, resuelto el 24 de julio de 2024, citando a *PR Eco Park et al. v. Mun. de Yauco,* supra, pág. 531, citando a *Caribbean Communications v. Pol. de P.R.*, 176 DPR 978, 994 (2009). En ese sentido, nuestro más Alto Foro ha expresado que, en la medida que haya pureza en estos procedimientos, los entes estatales y municipales promoverán la libre competencia entre los postores. *Íd.*

De ordinario, se recurre al mecanismo excepcional de *request for proposal,* mediante la solicitud de propuestas selladas, cuando se trata sobre la adquisición de bienes o servicios especializados que involucran aspectos altamente técnicos y complejos o cuando existen escasos competidores cualificados. *Transporte Sonnell, LLC v. Junta de Subastas de la Autoridad de Carreteras y Transportación de Puerto Rico y otro*, supra; *PR Eco Park et al. v. Mun. de Yauco,* supra, pág. 532; *CD Builders v. Mun. Las Piedras,* 196 DPR 336, 345 (2016); *R & B Power v. E.L.A.*, supra, págs. 621-622. Debido a su naturaleza informal y flexible, y la erogación de fondos públicos que implica, se exige que la utilización del *request for proposal* "no se convierta en la norma como un escape a la competencia secreta de la subasta tradicional". *PR Eco Park et al. v. Mun. de Yauco*, supra, pág. 532. Sobre ese particular, en *R & B Power v. E.L.A.*, supra, pág. 625, nuestro más Alto Foro expresó que:

> Este mecanismo excepcional no puede convertirse en la norma y así servir de subterfugio para que los entes gubernamentales soslayen el mecanismo tradicional de adquisición competitiva de bienes y servicios. Somos conscientes de la necesidad de proveerle al Gobierno y sus agencias mecanismos de mayor flexibilidad en el manejo de la cosa pública para poder atender con

prontitud y eficazmente los problemas que aquejan a la ciudadanía. Esa flexibilidad, sin embargo, no puede convertirse en patente de corso para el dispendio de fondos públicos. Le corresponderá a la Junta en el descargo de su responsabilidad fiduciaria asegurarse que ello sea así. Como siempre, será responsabilidad de los tribunales velar por que las agencias y las corporaciones públicas no se conviertan en autócratas en el ejercicio de la facultad extraordinaria concedida, actuando sin parámetros adecuados y exentos de supervisión alguna.

Aun cuando la subasta formal y el *request for proposal* son mecanismos distintos, nuestro Tribunal Supremo ha reconocido que un requerimiento de propuestas participa de características adjudicativas de la misma forma que la subasta tradicional. *PR Eco Park et al. v. Mun. de Yauco,* supra, pág. 532, citando a *R & B Power v. E.L.A.,* supra, pág. 624. Por ejemplo, el Foro revisor de última instancia ha establecido que del *request for proposal* debe surgir los requerimientos, los términos y las condiciones, así como los factores que han de considerarse en la evaluación para la adjudicación de la subasta. *Íd.* En vista de ello, son de clara aplicación los principios generales establecidos en la Sección 3.16 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9656 (LPAU), que exige que cuando la agencia concluye un procedimiento adjudicativo en un caso particular, notificará por escrito por correo ordinario o electrónico a las partes su determinación, los fundamentos para la misma y el recurso de revisión disponible. *R & B Power v. E.L.A.,* supra, pág. 624; *Velázquez v. Adm. de Terrenos,* 153 DPR 548 (2001). Por tal razón, los oferentes o participantes de un *request for proposal* pueden cuestionar, mediante revisión judicial, la adjudicación de una propuesta de subasta. *PR Eco Park et al. v. Mun. de Yauco,* supra, págs. 532-533. Ello aplica aun cuando el documento mismo de licitación nada disponga respecto al derecho de revisión judicial, pues el *request for proposal* no está exento de revisión judicial,

aunque la legislación no lo disponga expresamente. *Íd.*, pág. 533; *R & B Power v. E.L.A.*, supra, pág. 624.

Tanto las subastas tradicionales como los requerimientos de propuestas que adjudique una entidad gubernamental están regidos por las disposiciones de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, 3 LPRA sec. 9601 *et seq.* (LPAU), y, en lo aquí atinente, por los términos del Manual de Adquisiciones para los Programas CDBG-DR, CDBG-MIT y CDBG Estatal, Reglamento Núm. 9506 de 25 de septiembre de 2023 (Reglamento Núm. 9506). En particular, la Sección 4.2 de la LPAU, 3 LPRA sec. 2172, dispone, en lo pertinente, lo siguiente:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley, cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración. La parte notificará la presentación de la solicitud de revisión a la agencia y a todas las partes dentro del término para solicitar dicha revisión. La notificación podrá hacerse por correo. Disponiéndose, que[,] si a la fecha del archivo en autos de copia de la notificación de la orden o resolución final de la agencia o del organismo administrativo apelativo correspondiente es distinta a la del depósito en el correo de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo.
>
> […].

A tenor con ello, el Reglamento Núm. 9506, *supra,* establece que toda adjudicación deberá ser notificada a todos los ofertantes no agraciados por correo electrónico o correo certificado en o antes del siguiente día laboral de haberse recibido la comunicación de la Junta de Subastas. Artículo V, Sección 5.4 y 5.5 del Reglamento Núm. 9506. De igual forma, a los fines de que una notificación de adjudicación de requerimiento de propuestas goce de eficacia jurídica, la misma deberá apercibir a las partes de lo siguiente: (1)

Fecha de la notificación; (2) Resolución de la Junta de Subastas; (3) Nombre y dirección de todos los ofertantes; (4) Número de la subasta o del *request for proposal*; (5) Resumen de la oferta; (6) Factores o criterios considerados para adjudicar la oferta; (7) El nombre de cada ofertante con indicación de las partidas adjudicados a su favor y **el motivo de rechazo de las partidas no adjudicadas**; (8) **Defectos, si alguno, de las propuestas de los ofertantes no agraciados**; (9) Derecho a presentar un recurso de revisión judicial de conformidad con la Sección 4.2 de LPAU, 3 LPRA sec. 9672, así como la *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003*, Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24 *et seq.* Artículo V, Sección 5.6 del Reglamento Núm. 9506.

El precitado Reglamento añade, a su vez, que en el aviso de adjudicación habrá de figurar la siguiente información al ofertante agraciado: (1) Documentos necesarios para la ejecución del contrato; (2) El plazo asignado para presentar la documentación requerida y; (3) Una advertencia de que la adjudicación no es vinculante hasta que se ejecute el contrato. Artículo V, Sección 5.7 del Reglamento Núm. 9506.

El Tribunal Supremo de Puerto Rico ha reiterado que la exigencia de fundamentar la adjudicación de una subasta o un *request for proposal* permite a los Tribunales revisores cumplir con su obligación constitucional de asegurar que el derecho a obtener la revisión judicial de una decisión sea efectivo. *L.P.C. & D., Inc. v. A.C.*, 149 DPR 869, 877-888 (1999). Asimismo, el Foro de última instancia ha expresado que una notificación fundamentada permite que los Tribunales puedan revisar efectivamente los fundamentos para determinar si la adjudicación realizada por la agencia ha sido arbitraria, caprichosa o irrazonable, más aún en el caso de subastas públicas y *request for proposals*, en virtud de las cuales se desembolsan fondos públicos. *Íd.*; *Pta. Arenas Concrete, Inc. v. J.*

*Subastas*, 153 DPR 733, 742 (2001). Si la parte adversamente afectada por la determinación administrativa desconoce los fundamentos que propiciaron su decisión, el trámite de la revisión judicial de tal dictamen se convertiría en un ejercicio fútil. *L.P.C. & D., Inc. v. A.C.,* supra, pág. 878.

En cuanto al contenido de la notificación de la adjudicación de la subasta y del *request for proposal*, tanto la normativa aplicable como las opiniones emitidas por nuestro Tribunal Supremo han sido enfáticas y claras en lo que las agencias deben incluir para que satisfaga las exigencias mínimas del debido proceso de ley y facilite la revisión judicial. Conforme a ello, en *L.P.C. & D., Inc. v. A.C.,* supra, ante una notificación de una adjudicación de subasta de una agencia administrativa en la cual advirtió la disponibilidad y el término para solicitar reconsideración, pero no se fundamentó la determinación, nuestro más Alto Foro estableció –por primera vez– que una determinación administrativa tenía que estar fundamentada, pues una parte necesita conocer los motivos de la agencia para poder ejercer su derecho a la revisión judicial. *L.P.C. & D., Inc. v. A.C.,* supra, págs. 878-879. Así, dispuso que **una notificación sobre adjudicación de subasta, <u>aunque sea de forma sumaria y sucinta</u>, debía estar fundamentada para que los Tribunales revisores puedan cumplir con su obligación constitucional y asegurar que el derecho a obtener la revisión judicial de una decisión administrativa sea efectivo; además de asegurarse de que la decisión no fue una arbitraria, caprichosa o irrazonable**. *Íd.* Dicho aspecto cobra especial importancia en el caso de subastas públicas o *request for proposals*, ya que implican directamente el desembolso de fondos públicos. *Pta. Arenas Concrete, Inc. v. J. Subastas*, supra, pág. 742; *L.P.C. & D., Inc. v. A.C.,* supra.

En ese sentido, el Tribunal Supremo de Puerto Rico detalló que algunos de los objetivos que se logran al requerir que la decisión de una agencia administrativa esté fundamentada son: (1) proporcionar a los Tribunales la oportunidad de revisar adecuadamente la decisión administrativa y facilitar esa tarea; (2) fomentar que la agencia adopte una decisión cuidadosa y razonada dentro de los parámetros de su autoridad y discreción; (3) ayudar a la parte afectada a entender por qué el organismo administrativo decidió como lo hizo y, al estar mejor informada, poder decidir si acude al foro judicial o acata la determinación; (4) evitar que los Tribunales se apropien de funciones que corresponden propiamente a las agencias administrativas según el concepto de especialización y destreza. *Pta. Arenas Concrete, Inc. v. J. Subastas*, supra, pág. 742; *L.P.C. & D., Inc. v. A.C.*, supra, págs. 878-879.

Por otro lado, la Sección 3.19 de la LPAU, 3 LPRA sec. 2165, en lo referente a las reconsideraciones presentadas ante las agencias administrativas, disponía lo siguiente:

[...]

La parte adversamente afectada por una decisión podrá presentar una moción de reconsideración ante la Administración de Servicios Generales o ante la entidad gubernamental correspondiente, según sea el caso, dentro del término de diez (10) días desde la fecha de la notificación de la adjudicación de la subasta o propuesta. La Administración de Servicios Generales o la entidad gubernamental correspondiente, según sea el caso, deberá considerar la moción de reconsideración dentro de los diez (10) días laborables de haberse presentado. Si se tomare alguna determinación en su consideración, el término para instar el recurso de revisión judicial empezará a contarse desde la fecha en que se archive en autos, copia de la notificación de la decisión de la Administración de Servicios Generales o la entidad gubernamental correspondiente, según sea el caso, resolviendo la moción de reconsideración. Si la fecha de archivo en autos de copia de la notificación de la orden o resolución es distinta a la del depósito en el correo ordinario o del envío por medio electrónico de dicha notificación, el término se calculará a partir de la fecha del depósito en el correo ordinario o del envío por medio electrónico, según corresponda. Si la Administración de Servicios Generales o la entidad gubernamental correspondiente, según sea el caso,

dejare de tomar alguna acción con relación a la moción de reconsideración dentro de los diez (10) días de haberse presentado, se entenderá que esta ha sido rechazada de plano, y a partir de esa fecha comenzará a correr el término para la revisión judicial.

Si la Administración de Servicios Generales o la entidad gubernamental correspondiente, según sea el caso, acoge la solicitud de reconsideración dentro del término provisto para ello, deberá emitir la resolución en reconsideración dentro de los treinta (30) días siguientes a la radicación de la moción de reconsideración. Si la Administración de Servicios Generales o la entidad gubernamental correspondiente, según sea el caso, acoge la moción de reconsideración, pero dejase de tomar alguna acción con relación a la moción dentro de los treinta (30) días de esta haber sido radicada, perderá jurisdicción sobre la misma y el término para solicitar la revisión judicial empezará a contarse a partir de la expiración de dicho término de treinta (30) días. La Administración de Servicios Generales o la entidad gubernamental correspondiente, según sea el caso, podrá extender dicho término una sola vez, antes de que este culmine, por un término adicional de quince (15) días.

[...]

Recientemente, el 19 de febrero de 2024, la precitada Sección fue enmendada por la Ley Núm. 48-2024, a los fines de aclarar que el mecanismo disponible para impugnar las determinaciones de la Junta de Subastas será la revisión administrativa y que la Junta Revisora de la Administración de Servicios Generales es el único organismo para impugnar las determinaciones de la Junta de Subastas y presentar el recurso de revisión administrativa. Exposición de motivos de la Ley Núm. 48-2024. A su vez, mediante el citado estatuto se reconoce el recurso de revisión administrativa como el único recurso para impugnar las adjudicaciones en los procesos de licitación pública regulados por la Ley Núm. 73-2019, *supra*, y dispone que su presentación es un requisito jurisdiccional antes de presentar un recurso de revisión judicial. *Íd*. La Asamblea Legislativa expresó que, al instituir el recurso de revisión administrativa ante la Junta Revisora como el único mecanismo de impugnación de las adjudicaciones, se da uniformidad y certeza al proceso. *Íd*. Asimismo, la rama legislativa particularizó que, al

establecer el recurso de revisión administrativa como un requisito jurisdiccional para presentar un recurso de revisión judicial, se garantiza que las partes tengan la oportunidad de acudir a un organismo especializado para corregir cualquier error sin la necesidad de incurrir en los costos que conlleva la presentación de un recurso de revisión judicial y esperar el tiempo que conlleva la adjudicación de un recurso en el Tribunal de Apelaciones. *Íd.* En virtud de ello, la nueva Sección 3.19 de la LPAU, *supra,* lee como sigue:

> [...]
>
> La parte adversamente afectada por una determinación en un proceso de licitación pública podrá presentar una solicitud de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales dentro del término de diez (10) días laborables, contados a partir del depósito en el correo federal o la notificación por correo electrónico, lo que ocurra primero, de la adjudicación del proceso de licitación pública. La Junta Revisora de Subastas de la Administración de Servicios Generales deberá determinar si acoge o no la solicitud de revisión administrativa, dentro del término de diez (10) días laborables de haberse presentado la solicitud de revisión administrativa. Si dentro de ese término, la Junta Revisora de la Administración de Servicios Generales determina acoger la misma, tendrá un término de treinta (30) días calendario adicionales para adjudicarla, contados a partir del vencimiento de los diez (10) días laborables que tenía para determinar si la acogía o no. La Junta Revisora de la Administración de Servicios Generales podrá extender el término de treinta (30) días calendario, una sola vez, por un término adicional de quince (15) días laborables.
>
> Si se tomare alguna determinación en la revisión administrativa, el término para instar el recurso de revisión judicial ante el Tribunal de Apelaciones comenzará a contarse desde la fecha en que se depositó en el correo federal o se notificó por correo electrónico, lo que ocurra primero, copia de la notificación de la decisión de la Junta Revisora de Subastas de la Administración de Servicios Generales adjudicando la solicitud de revisión administrativa. Si la Junta Revisora de Subastas de la Administración de Servicios Generales dejare de tomar alguna acción con relación al recurso de revisión administrativa, dentro de los términos dispuestos en esta Ley, se entenderá que este ha sido rechazado de plano, y a partir de esa fecha comenzará a decursar el término para presentar el recurso de revisión judicial. La presentación del recurso de revisión administrativa ante la Junta Revisora de

Subastas de la Administración de Servicios Generales será un requisito jurisdiccional antes de presentar un recurso de revisión judicial ante el Tribunal de Apelaciones.

La parte adversamente afectada tendrá un término jurisdiccional de treinta (30) días calendario para presentar un recurso de revisión judicial ante el Tribunal de Apelaciones, contados a partir del depósito en el correo federal o de remitida la determinación por correo electrónico, lo que ocurra primero, ya sea de la adjudicación de la solicitud de revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales, o cuando venza el término que tenía la Junta Revisora de Subastas de la Administración de Servicios Generales para determinar si acogía o no la solicitud de revisión administrativa.

[…]

El cumplimiento de las formalidades antes indicadas es de carácter jurisdiccional, por lo que la eficacia de la notificación de adjudicación de subasta o del requerimiento de propuestas quedará supeditada a la fiel concurrencia de estas. *PR Eco Park et al. v. Mun. de Yauco,* supra. Las referidas exigencias responden a que, el derecho de cuestionar una subasta o un requerimiento de propuestas adjudicado mediante un recurso de revisión judicial es parte del debido proceso de ley, razón por la cual se hace indispensable una notificación adecuada. *Íd.* "S[o]lo a partir de la notificación así requerida es que comenzará a transcurrir el término para acudir en revisión judicial". *PVH Motor v. ASG,* 209 DPR 122, 132 (2022), citando a *IM Winner, Inc. v. Mun. de Guayanilla,* 151 DPR 30, 38 (2000). Lo anterior tiene el efecto de que el recurso que se presente ante un tribunal de mayor jerarquía sea prematuro. *PR Eco Park et al. v. Mun. de Yauco,* supra, pág. 538. Así pues, ante una notificación defectuosa, se priva a este Foro de jurisdicción para entender sobre el asunto impugnado. *PVH Motor v. ASG,* supra. De otro lado, hasta tanto no discurra el referido término, el licitador u oferente no podrá formalizar el contrato con la entidad gubernamental. *PR Eco Park et al. v. Mun. de Yauco,* supra, pág. 538.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

### III

Sabido es que los tribunales deben ser celosos guardianes de su jurisdicción y que no poseen discreción para asumirla donde no la tienen. *Allied Mgmt. Group v. Oriental Bank*, supra. Por consiguiente, los asuntos relacionados a la jurisdicción de un tribunal son privilegiados y deben atenderse con primicia. *Íd.* Cónsono con lo anterior, por tratarse de un asunto de índole jurisdiccional, procedemos a evaluar si la agencia recurrida cumplió con su deber de notificar adecuadamente la adjudicación del *request for proposal* impugnado. Veamos.

Luego de evaluar sosegadamente el contenido de la notificación impugnada, colegimos –por tercera ocasión– que no concurren las exigencias reconocidas por nuestro ordenamiento jurídico para legitimar su oponibilidad. En esta ocasión, la ausencia de (1) los motivos del rechazo de las partidas no adjudicadas, y (2) los defectos, si alguno, de las propuestas de los ofertantes no agraciados, constituyen defectos de carácter sustantivo que privan a la parte recurrente de cuestionar la corrección del quehacer administrativo ejercido y a este Foro de cumplir con su función revisora.

De una revisión del *Notice of Award* emitido el 9 de octubre de 2024, surge que la Junta añadió, para algunos de los proponentes, los motivos del rechazo de sus propuestas. En específico, lo subrayado a continuación fue la información incluida por la agencia recurrida:

> [...]
>
> After evaluating the proposals, the EC determined to rate **Innovative Emergency Management, Inc., Tetra Tech, Inc and Custom Group, LLC** as Highly Qualified proponents. The EC concluded that these proponents had the experience to perform the Program Management Services successfully. On the other hand, the EC determined that

**BMA Group, Plexos Group, LLC, Family Endeavors, Inc., CSA Architects & Engineers, LLP, and Tidal Basin Caribe, LLC**, were Not Qualified proponents. The following paragraphs describe a synthesis of the EC evaluation of each proposer, based on the criteria, as stated in the RFP-2023-05.

**EC Evaluation:**
  **A. Not Qualified Proposers:**
  1. **BMA Group (BMA)** was ranked as **Not Qualified**. BMA Group passed the submission requirements evaluation for this RFP. As a result of the evaluation performed, the Proposer received a rating of Excellent in the critical criterion of professional qualifications and the experience of the proposer to successfully perform the services required. The Proposer received a rating of Fair for the critical criteria of professional qualifications and specialized experience of the proposed key staff, given that several of the proposed key staff did not comply with the RFP requirements. The Proposer received a rating of Fair for the quality of the proposed approach and its relevance to the services described in this RFP, due [to] not demonstrating an understanding of the overall implementation of the program and not providing a clear plan for the management for complaints and reconsiderations. For the important criterion of the capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe, BMA received a Fair rating as well, due to BMA not providing the level of commitment that the key staff will dedicate to the program. Given that BMA Group received two ratings of Fair in critical criteria, it was ranked as **Not Qualified** as instructed in the RFP.

  2. **Plexos Group[,] LLC (Plexos)** was ranked as Not Qualified by the EC. The Proposer passed the submission requirements evaluation for this RFP. Plexos received a rating of Excellent for the critical criteria of the professional qualifications and experience of the Proposer to successfully perform the services required, and the quality of the proposed work approach and its relevance to the services requested. In the important criterion of the capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe, the Proposer received a rating of Excellent as well. Regarding the critical criterion of the professional qualifications and specialized experience of the proposed key staff this Proposer obtained a rating of Fair, since one of the [k]ey[s]Staff proposed for CEWRI-DR did not comply with the requirements as set forth in the RFP. Having Plexos obtained a rating of Fair in a critical criterion, the EC ranked Plexos as **Not Qualified**.

  3. **Family Endeavors, Inc., dba Endeavors (Family Endeavors)** was ranked as **Not Qualified**. Family Endeavors passed the submission requirements

evaluation for this RFP. As a result of the evaluation performed, the Proposer received a rating of Fair in the first criterion of professional qualifications and the experience of the proposer to successfully perform the services required, because the Proposer did not provide any experience or comparable in project management, which is the service required by the RFP. As for the second criterion of professional qualifications and specialized experience of the proposed key staff, the Proposer also received a rating of Fair, since one of the [k]ey [s]taff proposed for CEWRI-DR did not comply with the requirements as set forth in the RFP. In the third criterion of quality of the proposed approach and its relevance to the services described in this RFP Family Endeavors received a rating of Fair, given that it failed to provide timeframes as required per the RFP, failed to show their clear understanding of the CEWRI programs, subprograms and their needs, and failed to explain any public outreach effort. For the fourth criterion of capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe, the Proposer received a rating of Good. Given that, Family Endeavors received ratings of Fair in all critical criteria, it was ranked as **Not Qualified** by the EC.

4. **CSA Architects & Engineers, LLP (CSA)** was ranked as **Not Qualified**. CSA passed the submission requirements evaluation for this RFP. As a result of the evaluation performed, the Proposer received a rating of Excellent in the critical criterion of professional qualifications and the experience of the proposer to successfully perform the services required. In the important criterion regarding the capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe, the Proposer received a rating of Excellent. CSA received a rating of Fair in the critical criterion of professional qualifications and specialized experience of the proposed key staff, due to one of the [k]ey [s]taff proposed for CEWRI-HH not complying with the requirements as set forth in the RFP. In the critical criterion of quality of the proposed approach and its relevance to the services described in this RFP, the Proposer received a rating of Good. For all the reasons above, having received a rating of Fair in one critical criterion, CSA was ranked as **Not Qualified** by the EC.

5. **Tidal Basin Caribe[,] LLC (Tidal)** was ranked as **Not Qualified**. Tidal passed the submission requirements evaluation for this RFP. As a result of the evaluation performed, the Proposer received a rating of Excellent in the critical criterion of professional qualifications and the experience of the proposer; and for the quality of the proposed approach and its relevance to the services described in this RFP. For the fourth criterion regarding the capacity of the key staff and the ability to commit

adequate time to effectively perform the services, the Proposer received rating of Good in this criterion. Regardless, in the second criterion of professional qualifications and specialized experience of the proposed key staff[,] Tidal received a rating of Fair, <u>due to various of their proposed [k]ey [s]taff not complying with all of the requirements for their corresponding positions</u>. Therefore, having received a rating of Fair <u>in one critical criterion</u>, the EC ranked Tidal as **Not Qualified**.

**B. Highly Qualified Proposers:**

1. **Innovative Emergency Management, Inc. (IEM)** was ranked as **Highly Qualified**. IEM passed the submission requirements evaluation for this RFP. As a result of the evaluation performed, the Proposer received a rating of Excellent in the critical criterion of professional qualifications and the experience of the proposer to successfully perform the services required, as well as in the second criterion of professional qualifications and specialized experience of the proposed key staff. In the third criterion of quality of the proposed approach and its relevance to the services described in this RFP, IEM also received a rating of Excellent. For the important criterion of capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe, the Proposer received a rating of Excellent.

   In terms of the Section 3 Business concern and MBE/WBE, IEM didn't submit evidence accreditive of been a Section 3 business but did present evidence of been a MWBE enterprise. Hence, MWBE preference was given by the EC. Therefore, the EC ranked **IEM** as **Highly Qualified**.

2. **Tetra Tech, Inc[.] (Tetra Tech)** was ranked as **Highly Qualified**. The Proposer passed the submission requirements evaluation for this RFP. Tetra Tech received a rating of Excellent for the critical criteria of the professional qualifications and experience of the Proposer to successfully perform the services required, and for the important criterion regarding the capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe. Regarding the critical criteria of the professional qualifications and specialized experience of the proposed key staff and the quality of the proposed approach and its relevance to the services, this Proposer obtained a rating of Good.

   In terms of the Section 3 Business concern and MBE/WBE, Tetra Tech did not submit the documentation required, consequently, it was not conceded any preference to this proposer. For all the reasons above, and as per section 10.3.3 of the RFP Tetra Tech was ranked as **Highly Qualified**.

3. **Custom Group, LLC (Custom Group)** was ranked as **Highly Qualified**. The Proposer passed the submission requirements evaluation for this RFP. As a result of the evaluation completed by the EC, the Proposer received a rating of Excellent for the critical criterion of quality of the proposed approach and its relevance to the services described in this RFP. For the important criterion of capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe, Custom Group received a rating of Excellent as well. Custom Group received a rating of Good in the critical criterion of professional qualifications and specialized experience of the proposed key staff. Lastly, Custom received a rating of Good for the critical criterion of professional qualifications and experience of the Proposer to successfully perform the services required.

In terms of the Section 3 Business concern and MBE/WBE, Custom Group didn't submit evidence accreditive of been a Section 3 or WBE business. However, the Proposer did present evidence accreditive of been an MBE enterprise, hence, MBE preference was given by the EC. Given all of the above, Custom Group was considered as **Highly Qualified** as identified in the RFP.

**Table 2** below describes the EC's ratings of the work approach and cost proposal of the Highly Qualified proponents:

**Table 2: Summary of Highly Qualified Proposers**

| Criteria | Innovative Emergency Management, Inc. | Tetra Tech, Inc. | Custom Group, LLC. |
|---|---|---|---|
| Professional qualifications and experience of the to *[sic]* successfully perform the services required in this RFP, as evidenced by the successful implementation of similar programs in large complex public organizations preferably State government and municipalities. (**Critical**) | Excellent | Excellent | Good |
| Professional qualifications and specialized experience of the proposed key staff as evidenced by relevant experience to the role proposed. (**Critical**) | Excellent | Good | Good |
| Quality of the proposed approach and its relevance to the services described in this RFP, including implementation schedule and understanding of the PRDOH's goals. (**Critical**) | Excellent | Good | Excellent |
| Capacity of the key staff and the ability to commit adequate time to effectively perform the services in the role assigned within the required timeframe. (**Important**) | Excellent | Excellent | Excellent |
| Financial stability of the Proposer and its capacity to effectively perform the services. (**Pass/Fail**) | Pass | Pass | Pass |
| **Ranking** | **Highly Qualified** | **Highly Qualified** | **Highly Qualified** |
| Level, quality, and relevancy of participation by Section 3 Business Concern and MBE/WBE registered Puerto Rico business[.] (**Preference**) | Yes | No | Yes |
| **Price Proposal** | **$43,422,264.80** | **$39,920,200.00** | **$43,567,224.60** |

Pursuant to Section 10.9 of the RFP-2023-05, upon completion of the technical evaluation the EC opened the price proposals of those firms/teams whose proposals are deemed to possess the qualifications and experience necessary to successfully perform the services required. The evaluation of the price would be based on its reasonableness and the value offered to the PRDOH, the Government of Puerto Rico, and its citizens.

### VII. Name of every offeror with an indication of the items awarded in their favor and the reason for rejecting the items not awarded:

On January 30, 2024, the Procurement Division recommended the Bid Board to award the contracts to **Innovative Emergency Management, Inc.** and **Tetra Tech, Inc.**, which are responsible firms that obtained the highest score after the evaluation of their qualifications, work approach to the project, and their price was determined to be reasonable for the services.

In conclusion, the Board stated that the award was granted to the responsible Proposer whose technical approach to the project, qualifications, price, and/or any other factors considered, resulted in the most advantageous to the PRDOH, provided that the cost is reasonable under the methods identified in the Procurement Manual.

[…].[14]

Como observamos, la parte recurrida añadió una breve expresión por proponente sobre los motivos por los cuales sus propuestas no fueron las agraciadas. Ahora bien, aunque nuestro ordenamiento jurídico únicamente exige que la notificación de la adjudicación sea fundamentada de forma sumaria y sucinta, al examinar lo precitado, no encontramos clara y expresamente los motivos del rechazo de las partidas no adjudicadas, y los defectos, si alguno, de la propuesta de Custom. En cuanto a dicha parte recurrente, la Junta explicó las razones por las cuales fue calificada como *Highly Qualified*. No obstante, más allá de añadir una tabla comparativa donde resume las evaluaciones de los proponentes *Highly Qualified*, ello no cumple con la exigencia antes mencionada, pues requiere un ejercicio interpretativo subjetivo que se aparta de la normativa antes expuesta. A diferencia de los demás ofertantes, a los que expresamente –y de forma extremadamente general– le

---

[14] Apéndice del recurso KLRA202400608, págs. 4554-4558. (Subrayado suplido).

indicaron la razón por la cual no fueron agraciados, a Custom no le notificaron los motivos del rechazo y los defectos, si alguno, de su propuesta.

En mérito de lo anterior, una vez más, resolvemos que la Junta incumplió con los requisitos jurisdiccionales estatuidos para imprimir eficacia a su quehacer. La notificación de su determinación es una defectuosa e inadecuada. La Junta intentó en varias ocasiones subsanar las deficiencias en la notificación, pero ninguna de ellas cumple con lo requerido por nuestro ordenamiento jurídico, según delineamos y detallamos, tanto en este recurso como en el KLRA202400099 y el KLRA202400446.

Sobre ese particular, la parte recurrida expresó que, "a[u]n cuando no haya sido reconocido por este Honorable Tribunal, Vivienda se sostiene en que ha seguido meticulosamente los lineamientos reglamentarios y las determinaciones judiciales pertinentes".[15] Añadió, además, que "[l]os recursos [de] revisión judicial previos han tenido consecuencias de gran magnitud, al obstaculizar y retrasar los esfuerzos de recuperación en Puerto Rico, afectando directamente a comunidades vulnerables y a miles de personas que dependen de la implementación ágil y eficiente de los programas de mitigación y recuperación [...]".[16] Sin embargo, contrario a los planteamientos de la recurrida, su incumplimiento constante con las exigencias mínimas de una notificación de esta naturaleza, lacera el debido proceso de ley de los proponentes que participaron del *request for proposal* en cuestión. Sus propias actuaciones –u omisiones– la hacen responsable de las referidas dilaciones. En ese sentido, aunque la agencia recurrida asegura que su manejo de los procedimientos no se aparta de las exigencias

---

[15] Véase, *Moción para Mostrar Causa por la que no se Debe Desestimar el Recurso por Falta de Jurisdicción y Otros Extremos*, pág. 1.
[16] Íd., nota 1.

doctrinales y jurisprudenciales, de una breve lectura de las múltiples notificaciones defectuosas emitidas por el organismo administrativo, aun cuando este Foro ha desglosado al detalle las deficiencias que ameritan ser subsanadas y aún persisten, nos resalta la intención de la agencia de evadir la revisión judicial a la cual tienen derecho todos los proponentes que participaron en el *request for proposal* en cuestión. Ante ese escenario, debemos enfatizar que nuestro Tribunal Supremo ha reiterado que, parte de una buena administración implica llevar a cabo las funciones del gobierno como comprador con **eficiencia, honestidad y corrección** para proteger el dinero del Pueblo al cual dicho gobierno representa.[17]

Siendo así, las deficiencias identificadas redundan en suprimir nuestra jurisdicción, hasta tanto se cuente con una notificación adecuada y conforme a la ley. Consecuentemente, la Junta debe subsanar los defectos del *Notice of Award* del 9 de octubre de 2024 para que comiencen a decursar los términos de ley disponibles para que la parte recurrente, de entenderlo necesario, solicite la revisión judicial ante nos.

**IV**

Por los fundamentos que anteceden, dejamos sin efecto la paralización de los procedimientos y desestimamos los presentes recursos consolidados de revisión judicial por falta de jurisdicción.

Se le requiere a la Secretaría del Tribunal de Apelaciones proceder con el desglose de los apéndices –tanto digitales como físicos– de esta causa para ser utilizados por la parte recurrente en el futuro, de interesar recurrir de la determinación, una vez la parte recurrida notifique correctamente a las partes su dictamen final.

---

[17] *L.P.C. & D., Inc. v. A.C.,* supra, págs. 879-880, citando a *Mar-Mol, Co. v. Adms. Servicios Gens.,* 126 DPR 864, 871 (1990).

Además, se ordena desglosar la copia digital certificada del expediente administrativo CDBG-DRMIT-RFP-2023-05.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El juez Adames Soto disiente mediante voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>Panel Especial | | |
| CUSTOM GROUP, LLC<br>Recurrente<br><br>v.<br><br>JUNTA DE SUBASTAS DEL DEPARTAMENTO DE LA VIVIENDA DE PUERTO RICO; DEPARTMENTO DE LA VIVIENDA DE PUERTO RICO<br>Recurrido<br><br>v.<br><br>INNOVATIVE EMERGENCY MANAGEMENT, INC.; TETRA TECH, INC.<br>Licitadores agraciados<br><br>BRENDA MARRERO & ASOCIADOS GROUP, PLEXOS GROUP, LLC, FAMILY ENDEAVORS, INC., CSA ARCHITECTS & ENGINEERS, LLP; TIDAL BASIN CARIBE, LLC<br>Licitadores no agraciados | KLRA202400607<br><br>cons. con | *Revisión Judicial* procedente de la Junta de Subastas del Departamento de la Vivienda de Puerto Rico<br><br>RFP Núm.: CDBG-DRMIT-RFP-2023-05<br><br>Sobre: Request for proposal for program management services community energy and water resilience installations program, home energy resilience installations and incentive subprograms under the CDBG-DR CDBG-MT Puerto Rico, Department of Housing |
| TIDAL BASIN CARIBE, LLC<br>Recurrente<br><br>v.<br><br>JUNTA DE SUBASTAS DEL DEPARTAMENTO DE LA VIVIENDA DE PUERTO RICO; DEPARTAMENTO DE LA VIVIENDA DE PUERTO RICO<br>Recurrido<br><br>v.<br><br>INNOVATIVE EMERGENCY MANAGEMENT, INC.; TETRA TECH, INC.; CUSTOM GROUP, LLC<br>Proponentes-seleccionados<br><br>BMA GROUP, PLEXOS GROUP, LLC, FAMILY ENDEAVORS, INC., CSA ARCHITECTS & ENGINEERS, LLP<br>Proponentes | KLRA202400608 | Sobre: Impugnación de Adjudicación de Subasta sobre Requerimiento de Propuestas No. CDBG-DRMIT-RFP-2023-05 "Program Management Services related to the CEWRI-HH and CEWRI-DR" |

Número Identificador

SEN2024 _____

Panel integrado por su presidente, el juez Bermúdez Torres, el juez Adames Soto y la juez Aldebol Mora

### **VOTO DISIDENTE DEL JUEZ NERY E. ADAMES SOTO**

En *RBR Construction, S.E. v. Autoridad de Carreteras*, 149 DPR 836, 854 (1999) se nos dijo, en lo pertinente, que la notificación de una subasta debía estar fundamentada, *aunque sea de forma sumaria*. A los pocos meses, en *L.P.C. & D., Inc. v. Autoridad de Carreteras y otros*, 149 DPR 869, 879 (1999), el mismo alto Foro precisó que, *la notificación de la adjudicación de una subasta debe estar fundamentada*, **al menos de forma sumaria y sucinta**. *Por lo menos debe incluir la información siguiente: los nombres de los licitadores en la subasta y una síntesis de sus propuestas; los factores o criterios que se tomaron en cuenta para adjudicar la subasta; los defectos, si alguno, que tuvieran las propuestas de los licitadores perdidosos y la disponibilidad y el plazo para solicitar la reconsideración y la revisión judicial.*[18] (Énfasis provisto).

Lo cierto es que el requerimiento de que la notificación de las subastas cumpla con proveer fundamentos al menos de *forma sumaria y sucinta,* causa interrogantes acerca de qué de información debemos estimar como suficiente. En este sentido, surge la duda sobre cuán *sucintos* o *sumarios* habrán de ser los fundamentos para asegurarnos de que la adjudicación no se considere *arbitraria, caprichosa o irrazonable*. Ver, *Pta. Arenas Concrete, Inc. v. J. Subastas*, 153 DPR 733, 742 (2001).

No obstante, juzgo que en *Torres Prods. v. Junta Mun. de Aguadilla*, 169 DPR 886, 896 (2007) se insertó una consideración

---

[18] El análisis sobre los factores a ser contenidos en la notificación de adjudicación es extensible al mecanismo de compras conocido como *requerimiento de propuesta. PR Eco Park. et al. v. Mun. de Yauco*, 202 DPR 525, 532 (2019), que fue el aquí elegido.

que nos ofreció dirección para obtener respuesta al asunto planteado. En dicho Opinión fuimos advertidos de que el estándar mínimo de adecuacidad establecido sobre la información a ser incluida en la notificación ***no puede convertirse en un análisis detallado de cada propuesta, pues dejaría de ser una síntesis***. (Énfasis provisto). Cabe interpretar que, al decidir así, el Tribunal Supremo se decantó por una acepción de los vocablos *sucinto y sumarios* como breve, conciso, reducido, resumido, parco o escueto.[19]

Al aplicar tales acepciones al Aviso de Adjudicación (*Notice of Award*) que nos ha correspondido verificar, juzgo que esta cumple con holgura el requerimiento mínimo de adecuacidad requerido por nuestro Tribunal Supremo en las notificaciones de subastas. Limitándome a la información incluida en la referida notificación sobre el único de los licitadores que movió al Panel al cual estoy adscrito a declarar como defectuoso el Aviso de Adjudicación, Custom, lo cierto es que a este se le identificó como uno de los *Highly Qualified Proposers*, incluyéndose un párrafo que dio cuentas sobre el análisis que derivó en tal calificación. Además, en la tabla titulada *Summary of Highly Qualified Proposers*, -citada en la *Sentencia* que mis compañeros suscriben-, luego de particularizar sus calificaciones junto a la de los otros dos licitadores con igual calificación, al pie de esta se reveló que Custom fue el postor con el *Price Proposal* más alto, pues, aunque no fue así afirmado en la notificación, esto resultaba evidente al comparar su oferta monetaria con relación a la de otros dos *Highly Qualified Proposers*. Por tanto, y solo para fines de los requerimientos mínimos a incluirse en la notificación, juzgo que ello dio noticia suficiente a

---

[19] Real Academia Española, *Diccionario de la Lengua Española*, 23ª. Ed., (versión 23.8 en línea), https:/del.rae.es/sucinto,sumario?m=form (última visita 18 de diciembre de 2024).

dicho licitador para comprender por qué no resultó elegido con la buena *pro*.

En definitiva, la notificación del requerimiento de propuesta contiene la información mínima exigida para que los licitadores pudieran cuestionar el resultado, y este Foro intermedio ser ubicado en posición de revisar su razonabilidad. Exigencias adicionales a la información a ser contenida en la notificación superan la *síntesis* requerida por nuestra jurisprudencia y nos avocan a postergar procesos que, sin renunciar a velar porque sean transparentes, también merecen celeridad. Por lo explicado, muy respetuosamente *Disiento*.

Por las razones expuestas, respetuosamente disiento.

En San Juan, Puerto Rico, a <u>19</u> de diciembre de 2024.

Nery Enoc Adames Soto
Juez de Apelaciones